UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FILIBERTO CAPPUZZELLO,

    Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,[1]

    Defendant.

18-CV-0911-MJR
DECISION AND ORDER

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018, Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). (Dkt. No. 18)

Plaintiff Filiberto Cappuzzello ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 7) is denied, and defendant's motion (Dkt. No. 15) is granted.

---

[1] The Clerk of Court is directed to amend the caption accordingly.

## BACKGROUND[2]

Plaintiff protectively filed the instant application for DIB on August 1, 2014, alleging disability as of February 5, 2014, based on lung disease, back pain, knee pain, mood disorder, sleep apnea, skin disorder, plantar fasciitis, left foot strain, and depression. (Tr. 164, 181) The State agency denied initially his claim. (Tr. 83-93, 94, 95-96, 99-110) Plaintiff subsequently requested an Administrative Law Judge ("ALJ") hearing (Tr. 11-112), and appeared with counsel and a vocational expert for a video hearing before ALJ Christine Cutter on March 21, 2017. (Tr. 31-82) On June 14, 2017, the ALJ issued an unfavorable decision. (Tr. 12-30) The Appeals Council denied review on June 18, 2018 (Tr. 1-6), and this timely action followed. (Dkt. No. 1)

## DISCUSSION

### I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the

---

[2] The Court presumes the parties' familiarity with plaintiff's medical history, which is discussed at length in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.

2

Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second,

4

whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to

the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff had engaged in substantial gainful activity from January, 2014, through August, 2014, but there was a continuous 12-month period during which he did not engage in substantial gainful activity. (Tr. 17) At step two, the ALJ found that plaintiff had the severe impairments of reconstructive surgery of a weight-bearing joint and spine disorder. In addition, the ALJ addressed plaintiff's diagnosis of affective/depressive/mood disorder, but determined that it was nonsevere. (Tr. 18-20) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 20) Before proceeding to step four, the ALJ found that plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a). (Tr. 21)

Proceeding to step four, the ALJ concluded that plaintiff was capable of his past relevant work as a clerk typist. (Tr. 26) Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act. (Tr. 27)

IV. *Plaintiff's Challenges*

Plaintiff argues that the physical and mental RFC findings by the ALJ were not supported by substantial evidence. (*See* Dkt. No. 7-1 ("Pl. Mem.") at 15-25) Defendant, in turn, seeks affirmance of his final determination. (*See* Dkt. No. 15-1 ("Def. Mem.") at 21-30)

First, plaintiff asserts that the ALJ failed to properly apply the treating physician rule and did not otherwise properly weigh the opinion evidence with respect to the physical RFC. (Pl. Mem. 15-23)

Under the pertinent regulations in place at the time of plaintiff's application, the treating physician rule "generally requires deference to the medical opinions of a [plaintiff's] treating physician[.]". *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2) (The opinion of a treating physician is to be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record[.]"). To that end, the Commissioner is required to "always give good reasons" for the weight given to a treating source opinion. *Halloran*, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(c)(2)). The reasons must be specific and supported by evidence in the record. *Marth v. Colvin*, No. 15-cv-0643, 2016 WL 3514126, *6 (W.D.N.Y. June 28, 2016).

When controlling weight is not given to the opinion of a treating physician, the ALJ must consider the following factors to determine how much weight to give the opinion of a treating source: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) what evidence supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the area of specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant in a claimant's particular case. 20 C.F.R. §§ 404.1527(c), 416.927(c).

In evaluating the opinion evidence, the ALJ gave little weight to plaintiff's treating physician, Chitra Vankatram, M.D., who opined that plaintiff could lift and carry less than

7

10 pounds occasionally, sit for 15 minutes at a time for three hours in an eight-hour workday, and stand or walk for 15 minutes at a time for less than two hours in an eight-hour workday; that he would be absent more than four days per month; and that he would need unscheduled, five to 10-minute breaks more than 10 times per workday. (Tr. 24, 709-11)[3]

Acknowledging that Dr. Vankatram had treated plaintiff on multiple occasions, the ALJ explained that,

> [T]he degree of limitations cited is not well supported and appears to be based at least in part on the claimant's subjective allegations. The degree of limitations cited is also inconsistent with the record as a whole including the objective physical examination and minimal radiographic findings, the reported activities of daily living, the treatment received, and the lack of referral for surgery or more intensive treatments.

(Tr. 24)

Contrary to plaintiff's contention, the ALJ consulted the factors set forth in 20 C.F.R. § 404.1527(c) and provided good reasons for rejecting Dr. Venkatram's opinion. In summarizing the medical evidence, the ALJ noted that Dr. Venkatram had seen plaintiff multiple times and cited to the records from the Veteran's Affairs Medical Center ("VA") where plaintiff was treated for several years. (Tr. 22-23) The VA records reveal that plaintiff's physical examinations were largely unremarkable except for when he injured his back lifting his dog in September, 2014. (See Tr. 312-331, 472-74, 668 [e.g., reporting foot pain, requesting orthotics because they "have been helping;" reporting back and knee pain, but functioned well with injections; negative straight leg raising with mild low back tenderness; no inflammation of the bilateral knees, no knee effusion, no crepitations,

---

[3] Dr. Venkatram's opinion referenced a functional capacity exam completed by Physical Therapist ("PT") Brian Piekarski. (Tr. 703-08, 711)

8

and excellent muscle strength; walked without problem, reporting that Aleve helped with aches]). Diagnostic imaging also showed minimal findings with the exception of a 2017 MRI which revealed a disc herniation. (Tr. 22, 288-291, 294, 426-427, 553-554, 690-691). Thus, as the ALJ observed, Dr. Venkatram's restrictive opinion was inconsistent with the majority of the physical examination findings and the objective medical imaging tests. *See Veino*, 312 F.3d at 588 (observing that it was "within the province of the ALJ to resolve" conflict in evidence by crediting consulting physician's opinion and affording little weight to opinion of treating physician unsupported by objective medical evidence).

The ALJ also reasonably discounted the treating opinion because it was unsupported by plaintiff's conservative course of treatment. (*See* Tr. 51 [testifying that he had just started physical therapy before the hearing]; 240 [used no assistive device]; 665, 668 [referred to physical therapy, but did not go at first]; 623-25 [not advised to undergo surgery, but received knee injections]) *See Evans v. Comm'r of Soc. Sec.*, 110 F. Supp. 3d 518, 536 (S.D.N.Y. 2015) (finding substantial evidence to support ALJ's decision to give "little weight" to opinion of treating therapist where, *inter alia*, plaintiff had a "conservative treatment history").

Finally, the ALJ observed that Dr. Venkatram's opinion was inconsistent with plaintiff's reported activities of daily living, which included caring for his personal needs and hygiene, doing dishes, laundry, and household repairs, caring for his dog, mowing the lawn, shopping, managing money, paying bills, driving an automobile, playing games, exercising, and engaging in social interaction. (Tr. 23, 24)[4] Thus, the ALJ properly

---

[4] While Dr. Venkatram opined that plaintiff's limitations had existed since at least September 7, 2012, plaintiff worked approximately 30 hours weekly for New York State from 2009 to early August, 2014. (Tr. 40, 42, 183)

9

considered plaintiff's daily activities. *See Domm v. Colvin*, 579 Fed. Appx. 27, 28 (2d Cir. 2014) ("Here, the ALJ pointed to substantial evidence for giving the narrative statement of [plaintiff's] treating physician . . . only probative weight, noting that [the physician's] restrictive assessment was inconsistent with . . . [plaintiff's] testimony regarding her daily functioning."); *Roma v. Astrue*, 468 Fed. Appx. 16, 19 (2d Cir. 2012) (not error for an ALJ to use a claimant's participation in a "broad range of light, non-stressful activities" as evidence contradicting a treating source's opinion).

In sum, it is clear from the ALJ's decision that she properly considered the regulatory factors and articulated good reasons for the weight given.

Likewise, the ALJ did not err in evaluating the opinion of PT Piekarski, who assessed that plaintiff could lift and carry up to 10 pounds occasionally, occasionally operate a motor vehicle, rarely stoop, tolerate occasional vibration, occasionally reach overhead and in all directions, and sit/stand/walk for five minutes at one time or 40 minutes in an eight-hour workday, but could not push or pull more than 10 pounds, balance, kneel, crouch, crawl, climb ladders or scaffolds, or work around heights, humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, or extreme heat. (Tr. 25, 704-08) The ALJ properly afforded this opinion little weight, in addition to the reasons stated above, because plaintiff was only evaluated by the physical therapist on one occasion. (*Id.*) *See Petrie v. Astrue*, 412 Fed.Appx. 401, 405 (2d Cir. 2011) (finding that when a physician has only examined a claimant once or twice, "his or her medical opinion is not entitled to the extra weight of that of a treating physician").

Plaintiff also challenges the ALJ's mental RFC assessment on the basis of improper application of the treating physician rule with respect to psychiatrist Mahmud Mirza, M.D. (Pl. Mem. 23-25)

Dr. Mirza opined in 2016 that plaintiff had fair ability to understand, remember, and carry out detailed and simple job instructions; had poor ability to follow work rules, relate to coworkers, deal with the public, use judgment, interact with supervisors, deal with work stress, function independently, maintain attention and concentration, maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations, and understand, remember, and carry out complex instructions; that he would be unable to work in the same general area as other people; that his ability to function would significantly deteriorate if he were to return to any full time employment; and that he could satisfactorily perform work tasks involving two steps 80% of the time, and three or four steps 75% of the time. A year later, he opined that plaintiff had fair ability to follow work rules, maintain personal appearance, and demonstrate reliability, and poor ability in the remaining areas. Further, plaintiff would be absent more than four days a month and could perform work tasks involving two, three, and four steps less than 75% of the time. (*Id.*)

The ALJ's decision specifically addressed the opinion forms completed by Dr. Mirza, who was identified as plaintiff's treating psychiatrist. (Tr. 19-20, 24-25) In affording the opinions little weight, the ALJ found that the degree of mental limitations cited was inconsistent with the minimal mental status examination findings, minimal mental health treatment required and received, plaintiff's reported activities of daily living, his work

11

history through August, 2014, the conflicting opinion of the consulting psychologist, and the State agency assessments. (Tr. 25)

First, the ALJ noted that plaintiff only saw his treating psychiatrist, Dr. Mirza, every few months (Tr. 19), thereby properly considering the factors of specialization and frequency of treatment. See 20 C.F.R §§ 404.1527(c); 416.927(c).

Second, the ALJ discussed plaintiff's mental health treatment at length, noting that his mental status examinations described him as alert, oriented, relevant, coherent, cooperative, clear, organized, fluent, and goal directed, with normal affect and good eye contact. (Tr. 19, 24-25, 613, 615, 644, 677, 679, 684-85) Likewise, said examinations were negative for suicidal and homicidal ideation, paranoia, mania, delusions, and hallucinations. (See id., see also 235-38, 325-26, 354, 360) Plaintiff's memory was found to be either intact or adequate, insight and judgment were fair, and attention and concentration were intact. (Id.) The ALJ noted no evidence of psychiatric hospitalizations, that he had not been referred for more intensive outpatient treatment, and that his psychotropic medications were reportedly helpful. (Tr. 19).

Dr. Mirza stated that the limitations had existed since January 1, 2010 (Tr. 526) or September 7, 2012. (Tr. 694). As the ALJ noted, Dr. Mirza's opinions that he was significantly limited in functioning are inconsistent with Plaintiff's ability to perform extensive work activity and complete college studies during the same time period. (Tr. 19-20, 40, 42, 183, 613) Additionally, Dr. Mirza's own treatment notes show mostly normal findings on mental status examinations and plaintiff's complaints of depression arose in connection with his physical condition. (Tr. 325, 354, 360, 366, 613, 615, 644, 679, 685) The record also indicates that Dr. Venkatram, plaintiff's primary physician,

reported that a depression screen was negative. (Tr. 314, 471) Thus, the ALJ also considered the extent of the treatment relationship, as well as the supportability and consistency factors in assigning little weight to the opinion of plaintiff's treating psychiatrist. See 20 C.F.R §§ 404.1527(c); 416.927(c).

In sum, Dr. Mirza's opinion was inconsistent with plaintiff's work activity, completion of a college curriculum, minimal findings on mental status evaluations, and reports from other sources including a detailed independent examination by a consulting psychologist. See e.g., Tricarico v. Colvin, 681 Fed.Appx. 98 (2d Cir. Mar. 3, 2017) (ALJ's decision to afford limited weight to the treating source's assessment was supported by substantial evidence, insofar as it contained internal inconsistencies and was also inconsistent with the plaintiff's testimony and the findings and conclusions of the consultative examiner reflecting greater functional ability); see also Abarzua v. Berryhill, 754 Fed.Appx. 70 (2d Cir. Feb. 27, 2019) (ALJ did not err in discounting the restrictive limitations from treating sources as they were contradicted by the findings and conclusions of consultative medical sources, her conservative treatment, and her activities of daily living).

Despite plaintiff's disagreements with the ALJ's decision, the Second Circuit has stated that the substantial evidence standard "is so deferential that there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence." Cage v. Comm'r of Social Security, 692 F.3d 118, 127 (2d Cir. 2012) (citing Console v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966)). Indeed, "[u]nder the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence . . . [he] must show that no reasonable factfinder

13

could have reached the ALJ's conclusions based on the evidence in record." *Hanson v. Comm'r of Soc. Sec.*, No. 15-CV-0150, 2016 WL 3960486, at *12 (N.D.N.Y. June 29, 2016), *report and recommendation adopted sub nom. Hanson v. Colvin*, No. 15-CV-0150, 2016 WL 3951150 (N.D.N.Y. July 20, 2016).

The Court therefore finds that the ALJ's decision was free of legal error and supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is denied, and defendant Commissioner of Social Security's motion for judgment on the pleadings (Dkt. No. 15) is granted.

The Clerk of Court shall take all steps necessary to close this case.

SO ORDERED.

Dated: December 3, 2019
Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge